**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES EX REL WILLIAM ST.
JOHN LACORTE AND ANDREW A.
HENDRICKS,
Plaintiffs,

v.

RAMONA WAGNER; JEANINE DEHNER,
Defendants-Appellees,

No. 98-2629

and

ROCHE BIOMEDICAL LABORATORIES,
INCORPORATED,
Defendant,

v.

UNITED STATES OF AMERICA,
Movant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
N. Carlton Tilley, Jr., District Judge.
(CA-96-1024-2, CA-96-417-2)

Argued: June 8, 1999

Decided: July 16, 1999

Before WILKINSON, Chief Judge, and NIEMEYER
and KING, Circuit Judges.

_____

Reversed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Niemeyer and Judge King joined.

_____

**COUNSEL**

**ARGUED:** Irene Marietta Solet, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Bruce Bingham Whitman, Cincinnati, Ohio, for Appellees. **ON BRIEF:** David W. Ogden, Acting Assistant Attorney General, Walter C. Holton, Jr., United States Attorney, Douglas N. Letter, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Dan Fouts, ADAMS, KLEEMEIER, HAGAN & FOUTS, Greensboro, North Carolina, for Appellees.

_____

**OPINION**

WILKINSON, Chief Judge:

Ramona Wagner and Jeanine Dehner seek to intervene in a qui tam action brought by two other individuals under the False Claims Act (FCA). 31 U.S.C. § 3729(a)(1). Wagner and Dehner are the beneficiaries of the settlement of an earlier qui tam action which they brought against a different defendant. They now claim that the FCA permits them to intervene in the current suit because they were "but for" causes of a portion of the settlement that was reached in this action. We disagree. The statute plainly and absolutely prohibits intervention by private parties. We therefore reverse the district court's decision to grant their motion to intervene.

I.

The FCA prescribes civil penalties for knowingly submitting fraudulent claims to the government. 31 U.S.C. § 3729(a)(1). The Act also permits an individual to bring a qui tam action on the government's behalf to enforce section 3729. Id. § 3730(b)(1). The government may intervene in and take over the prosecution of such actions if it chooses. Id. § 3730(b)(2), (4). But once an action has been filed, "no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." Id. § 3730(b)(5).

If the action is successful, the government and the original plaintiff split the damages and penalties. Id. § 3730(d)(1)-(2). If the government settles the action, the original plaintiff is entitled to contest the fairness of the settlement before receiving his or her portion. Id. § 3730(c)(2)(B).

This case involves settlements arising from two separate qui tam actions against medical laboratories for submitting false claims to various federal health programs. In the first action, billing clerks Wagner and Dehner sued their employer -- Allied Clinical Laboratories (Allied) -- in the Southern District of Ohio. The government intervened in the action and settled it in March 1995 with Wagner and Dehner's consent. Wagner and Dehner received an $833,458 share of the settlement proceeds. They also released Allied and the government "from any claims arising from or relating to the filing of the Civil Action, or, pursuant to 31 U.S.C. § 3730(d)(1), for a share of the proceeds of the settlement under this Agreement." As part of the settlement, the government and Allied entered into a Corporate Integrity Agreement (CIA) under which Allied agreed to conduct periodic audits of its operations.

The other action -- and the one directly at issue here -- consists of four consolidated cases, two of which were filed by William St. John LaCorte and Andrew Hendricks against Roche Biomedical Laboratories. The United States intervened in this action and prosecuted it in the Middle District of North Carolina. Wagner and Dehner were not parties to this action.

While the LaCorte and Hendricks action was ongoing, Roche merged with Allied and a third company to form Laboratory Corporation of America (LabCorp). In November 1996 the government entered into a $182 million settlement (the Global Settlement) with LabCorp. The Global Settlement encompassed the LaCorte and Hendricks consolidated qui tam action. Also, some of the allegations covered by the Global Settlement had not arisen in any action. These allegations include conduct that came to the government's attention through audits occurring pursuant to the Allied CIA.

In December 1996 Wagner and Dehner filed a motion to intervene in the LaCorte and Hendricks action. They asserted that their role in

3

procuring the settlement that instituted the CIA entitled them to a share of the Global Settlement. The district court granted Wagner and Dehner's motion to intervene, and the government filed this interlocutory appeal.

II.

A.

Section 3730(b)(5) of the FCA provides that when a person brings a qui tam action, "no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." This provision states without qualification that persons other than the government may not intervene in qui tam actions. By drafting the statute in such unequivocal language, Congress made the strongest possible statement against private party intervention in qui tam suits.

The application of section 3730(b)(5) to this case is straightforward. Wagner and Dehner are persons other than the government. Therefore, the statute on its face precludes them from intervening in this action.

Wagner and Dehner attempt to sidestep section 3730(b)(5)'s categorical prohibition by arguing that section 3730(c)(5) somehow mandates an exception to this bar. Section 3730(c)(5) provides that "the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty." The section further states, "If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section." Wagner and Dehner claim that the Global Settlement constitutes an "alternate remedy" to their original action. Further, they contend that they must be able to intervene in the LaCorte and Hendricks action to assert this claim.

We disagree. Section 3730(c)(5) simply preserves the rights of the original qui tam plaintiffs when the government resorts to an alternate

4

remedy in place of the original action. This provision does not confer any rights on would-be intervenors.

Indeed, an original qui tam plaintiff need not intervene in another qui tam action to vindicate his rights when the government pursues an alternate remedy. Other mechanisms are available for qui tam plaintiffs to protect their interests. For example, before a settlement takes effect, a relator has an opportunity to contest the fairness, adequacy, and reasonableness of the settlement at a hearing. 31 U.S.C. § 3730(c)(2)(B). If the relator believes that the government acted improperly in procuring a settlement, then he may return to the court which had jurisdiction over the settlement and move to reopen the judgment under Fed. R. Civ. P. 60(b)(6).

Sections 3730(b)(5) and 3730(c)(5) are thus not in tension; instead, they are perfectly consistent. Section 3730(b)(5) protects the government and the original qui tam plaintiffs by preventing other private parties from intervening. Section 3730(c)(5) protects original qui tam plaintiffs when the government chooses to pursue an alternate remedy. Nothing in section 3730(c)(5) requires an exception to the categorical bar on private party intervention. Therefore, no ambiguity or conflict results from the coexistence of sections 3730(b)(5) and 3730(c)(5) in the statute.

Prohibiting intervention in this case is fully consistent with Congress' purposes in enacting sections 3730(b)(5) and 3730(c)(5). Settlements in qui tam actions can draw intervenors like moths to the flame. Congress therefore struck a careful balance between encouraging citizens to report fraud and stifling parasitic lawsuits. United States ex rel. S. Prawer & Co. v. Fleet Bank of Maine, 24 F.3d 320, 326 (1st Cir. 1994). The only way to preserve the balance that Congress struck is to apply the unqualified congressional mandate of section 3730(b)(5) to bar all would-be intervenors other than the government.

B.

Even were we to believe that the FCA permits intervention, no part of the Global Settlement constitutes an "alternate remedy" to Wagner and Dehner's original qui tam action. Section 3730(c)(5) assumes that

5

the original qui tam action did not continue. The government here did not pursue an alternate remedy to Wagner and Dehner's action. It instead intervened in the action, prosecuted it, and settled it with the plaintiffs' consent. Wagner and Dehner received an $833,458 share of the settlement of their action -- a settlement that they did not contest and expressly stipulated to be fair, adequate, and reasonable. See § 3730(c)(2)(B).

The Global Settlement did not include Wagner and Dehner's original qui tam action. Instead, the government settled other potential claims, at least some of which arose from discoveries that were made pursuant to Allied's CIA. The fact that the CIA was part of the settlement of Wagner and Dehner's original qui tam suit confers on them no entitlement to proceeds resulting from the later findings. There is no ground in the statute for recovery based on such attenuated "but for" causation. Therefore, nothing in the Global Settlement can be considered an "alternate remedy" to any part of the original action. As a result, section 3730(c)(5) is no longer relevant to Wagner and Dehner's situation.

Wagner and Dehner have already received their share from every claim they brought against Allied. They reaped $833,458 from their participation in the settlement. In fact, they expressly released Allied and the government "from any claims arising from or relating to the filing of the Civil Action." Thus to the extent that the claims against Allied in the Global Settlement "aris[e] from or relat[e] to" their original suit, they have released these claims in the settlement agreement. To the extent that these claims are unrelated to their earlier action, they have no rights because they are not bona fide relators with respect to those claims. Their status as mere "but for" causes is not cognizable under the statute and entitles them to nothing. They have already received their due.

The prospect of a large payout is likely to give rise to many cries of "me too." Some of these fortune-seekers may be "but for" causes of a portion of an FCA recovery. But unless these individuals are bona fide relators in the qui tam action from which recovery directly ensues, the statute accords them no share of the bounty.

6

III.

Wagner and Dehner ask us to bypass the plain language of the statute to permit them to intervene. This we refuse to do. "When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992) (internal quotation marks omitted). Because the FCA prohibits intervention by any person other than the government, the judgment of the district court is

REVERSED.

7