**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DIANE WEBSTER,
Movant-Appellant,

v.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

DAVID S. BOWMAN; BOWMAN

ENTERPRISES, INCORPORATED; PEARL
M. BOWMAN; ALISON BOWMAN
WATERS; DAVID S. BOWMAN, JR.;
KIMBERLY KING BOWMAN; JENNIFER
BOWMAN; DONNA BOWMAN DUNN;
ROBERT M. WATERS; ALICE FAYE
BLIZZARD,
Defendants.

No. 99-1485

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-98-1248-A)

Argued: April 7, 2000

Decided: July 12, 2000

Before WILLIAMS, MICHAEL, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Candace Smith McCall, CANDACE MCCALL, P.C., Fairfax, Virginia, for Appellant. Lowell Vernon Sturgill, Jr., Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** David W. Ogden, Acting Assistant Attorney General, Helen F. Fahey, United States Attorney, Douglas N. Letter, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Diane Webster seeks to intervene in a False Claims Act (FCA) suit brought by the government. Because the FCA prohibits intervention by private parties, we affirm the district court's denial of Webster's motion to intervene.

I

Webster worked for the Drug Enforcement Agency in its Finance, Policy and Review Unit, where she performed various accounting tasks. Around December 1996, in the course of a routine audit, Webster discovered a number of suspicious invoices and vouchers submitted by Finance Liaison Group (FLG). All of these expenditures had been approved by David Bowman, a DEA account manager. Webster reported Bowman and the suspicious invoices to her superiors, ultimately exposing a fraudulent scheme in which Bowman allegedly obtained over $6,000,000.

On December 10, 1997, Webster filed a qui tam suit under the FCA against Bowman, FLG, and thirteen John Doe defendants. Webster's

2

complaint alleged that FLG had fraudulently obtained money from the DEA by submitting false invoices and vouchers requesting payment for work that had not been performed. The complaint further alleged that Bowman had knowingly approved payment of the false claims.

The government declined to intervene in that action. In May 1998 Webster, with the government's consent, voluntarily dismissed her qui tam action without prejudice. See 31 U.S.C. § 3730(b) (false claim action brought by private person "may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting"). By that time, criminal charges and a civil forfeiture proceeding were pending against Bowman. Webster alleges that it looked as though there would be nothing left to recover in her qui tam suit once those other actions concluded, but that the "parties wanted to preserve the right to bring this action again should circumstances change." Webster Br. at 6.

Three months later on August 26, 1998, the United States filed its own civil action against FLG, Bowman, and a number of Bowman's family members, alleging false claims, conspiracy to defraud the government, and several additional common law causes of action. The government did not inform Webster of its intent to file the suit. Once she learned of the government's action, however, Webster filed a motion to intervene under Fed. R. Civ. P. 24. That motion was denied by the district court, and Webster appealed.

II

The FCA establishes civil penalties for knowingly submitting a false claim to the federal government. See 31 U.S.C. § 3729. The Act also permits private persons to sue on the government's behalf and recover for violations of section 3729. See id. § 3730(b); United States ex rel. LaCorte v. Wagner, 185 F.3d 188, 190 (4th Cir. 1999). If the action is successful, the private plaintiff is entitled to a portion of the damages and penalties recovered. See id. § 3730(d); LaCorte, 185 F.3d at 190. The government may intervene in an action filed by a private person, see 31 U.S.C. § 3730(b)(2), but once any FCA claim has been filed, "no person other than the Government may intervene

3

or bring a related action based on the facts underlying the pending action." Id. § 3730(b)(5).

Notwithstanding this unambiguous language, Webster argues that she is entitled to intervene in the government's FCA suit against Bowman. Webster first contends that section 3730(b)(5) prohibits private persons from intervening in FCA suits brought by other private persons, but does not prohibit intervention in a suit brought by the government. We are not persuaded. As we have recently held, the "statute plainly and absolutely prohibits intervention by private parties." LaCorte, 185 F.3d at 190. Webster's constricted interpretation of section 3730(b)(5) would read out of the statute any bar to private party intervention in a government false claims suit. That result clearly would be inconsistent with the congressional goal of striking a balance "between encouraging citizens to report fraud and stifling opportunistic lawsuits." Id. at 191-92. See id. ("The only way to preserve the balance that Congress struck is to apply the unqualified congressional mandate of section 3730(b)(5) to bar all would-be intervenors other than the government.").

Webster next argues that section 3730(b)(5) should not prevent her from intervening in the government's suit against Bowman because she is "in essence intervening upon her own original complaint, and is not adding a suit." Webster Br. at 12. Webster appears to argue that her voluntarily dismissed suit and the government's subsequently filed suit here are in fact the same action and that the government has simply "revived" her complaint by suing on the same facts. See Webster Br. at 12, 18. Consequently, Webster argues, she does not seek to intervene in a "related action" but rather seeks to resume participation in her own action. We disagree. Webster's assertion that her voluntarily dismissed complaint confers on her a continuing right to participate in the government's subsequently filed FCA suit is simply wrong. See Sandstrom v. ChemLawn Corp., 904 F.2d 83, 86 (1st Cir. 1990) (holding that voluntary dismissal "wipes the slate clean, making any future lawsuit based on the same claim an entirely new lawsuit unrelated to the earlier (dismissed) action"); 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2367 (2d ed. 1995) ("A voluntary dismissal without prejudice leaves the situation as if the action never had been filed."); 8 James W. Moore, Moore's Federal Practice § 41.40[9][b] (3d ed. 1999) ("A voluntary

4

dismissal under Rule 41(a)(2) renders the proceedings a nullity and leaves the parties as if the action had never been brought.").

Finally, Webster argues that section 3730(c)(5) allows her to intervene in the government's case. That provision allows the government "to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty." If the government elects an alternate remedy, "the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section." 31 U.S.C. § 3730(c)(5). Webster maintains that the government's FCA suit is an alternate remedy and that she should have the same rights in that suit that she would have had in her own, had she not dismissed it. Again, we disagree. Section 3730(c)(5) "does not confer any rights on would-be intervenors." LaCorte, 185 F.3d at 191. Rather, it "simply preserves the rights of the original qui tam plaintiffs when the government resorts to an alternate remedy in place of the original action." Id. Webster cannot assert the rights of an original qui tam plaintiff, however, because she abandoned those rights when she voluntarily dismissed her suit against Bowman.

Requiring a qui tam plaintiff to make some effort to prosecute her suit in order to participate in any ultimate recovery results in neither unfairness nor the frustration of congressional policy. By barring private persons from intervening in pending FCA actions or from bringing related suits, section 3730(b) creates a race to the courthouse: the winner of that race is the only person allowed to participate in the government's recovery, thus providing incentive to promptly report fraud. Once the race is won, however, the winner is not free simply to claim the prize and go home. As we and numerous other courts have observed, "[t]he history of the FCA qui tam provisions demonstrates repeated congressional efforts to walk a fine line between encouraging whistle-blowing and discouraging opportunistic behavior." United States ex rel. Springfield Terminal Ry. v. Quinn, 14 F.3d 645, 651 (D.C. Cir. 1994). See also LaCorte, 185 F.3d at 191-92; United States ex rel. LaCorte v. SmithKline Beecham Clinical Laboratories, Inc., 149 F.3d 227, 233-34 (3d Cir. 1998). As the government points out, Webster's reading of the statute would allow a private party to file a qui tam false claims suit with no intention of pursuing it, dismiss the suit without prejudice, and then, when the

5

government chose to investigate and prosecute its own claim, clamber back on board. The careful balance struck by Congress would be thrown awry if individuals could stockpile potential qui tam claims while waiting for more diligent plaintiffs to bring the case in earnest.

III

For the reasons given above, we affirm the district court's order denying Webster's motion to intervene.*

<u>AFFIRMED</u>

_____
*The government's motion for leave to file supplemental appendix materials is granted.

6