156 S.W.3d 574 (2005)
In the Interest of S.A.P.
No. 04-0473.
Supreme Court of Texas.
January 21, 2005.
*575 Lana S. Shadwick, Houston, Leona Jaquette, Phoebe Ellis Knauer, Cathy Ann Morris, Austin, for Petitioner.
Charles L. Levy, Law Office of Charles Levy, Stanley Rentz, Nita C. Fanning, Law Office of Nita Fanning, Galen B. Edwards, Waco, for Respondents.
PER CURIAM.
Based on a unanimous jury verdict, the trial court terminated the respondents' parent-child relationship with S.A.P., their one-year-old son. Based on an estoppel defense that was neither pleaded nor submitted to the jury, a divided court of appeals reversed. 135 S.W.3d 165, 168-71. Because estoppel was not proved conclusively, we hold it was waived, and thus reverse.
S.A.P. was born on June 8, 2001 to Scott and Rebecca Peterson.[1] Viewing all the evidence in the light most favorable to the verdict,[2] both parents had a long history of involvement with child welfare agencies in New York and Texas. Rebecca's personal history included physical, sexual, and substance abuse, and her two children from a previous relationship had been left at various times with a grandmother (who severely abused one of them), with her father (whom she had accused of abusing her), and finally with the Texas Department of Protective and Regulatory Services ("TDPRS"), which obtained termination of her parental rights to both of them a few months before S.A.P. was born. Similarly, Scott Peterson's personal history included an involuntary commitment for psychiatric problems, termination of his parental rights with two children from a previous marriage based on allegations of sexual abuse, and a series of hostile, disruptive, and delusional episodes in therapy sessions after S.A.P.'s birth.
Almost immediately after S.A.P. was born, the TDPRS took custody of him pursuant to a court order. Eleven months later, TDPRS amended its petition to seek *576 termination of the respondents' parent-child relationship with him.
At trial, jurors found neither Rebecca nor Scott had knowingly placed or allowed S.A.P. to remain in conditions endangering his well-being. Tex. Fam.Code § 161.001(1)(D). Indeed, they could hardly do otherwise, as S.A.P. remained in the custody of TDPRS for virtually his entire life. But the jury also found by clear and convincing evidence that (1) both parents had engaged in conduct that "endangers the physical or emotional well-being of the child," id. § 161.001(1)(E); (2) Rebecca had a previous parent-child relationship terminated on the basis of endangerment, id. § 161.001(1)(M); (3) Scott failed to comply with a court order establishing actions necessary for return of a child placed with TDPRS due to abuse or neglect, id. § 161.001(1)(O); and (4) termination was in S.A.P.'s best interest, id. § 161.001(2). The trial court rendered judgment on the jury verdict terminating the respondents' parental rights.
The court of appeals reversed based on identical letters TDPRS sent to each respondent within two weeks of S.A.P.'s birth. 135 S.W.3d at 168-69,171. The letters stated:
Child Protective Services has completed an investigation based on a report dated 6/8/2001 that you were responsible for abuse or neglect of one or more children in the above named case. Agency staff has concluded that you did not have a role in the alleged abuse or neglect. We will be offering services to your family to remedy any other problems identified during the investigation. Because all allegations involving you as an alleged perpetrator have been ruled out, you have the right to request that we remove information about your alleged role from our records.
Accompanying each letter was a form for requesting removal of "role information" from the TDPRS files that stated:
Once the role information involving you is removed from our records, THIS INFORMATION WILL BE PERMANENTLY DESTROYED AND WILL NOT BE AVAILABLE TO USE FOR ANY PURPOSE WHATSOEVER.
Both respondents signed and returned the form to indicate their decision "to request that all information about my role as an alleged perpetrator in this investigation be removed from the department's records."
Based on these letters, the respondents unsuccessfully sought dismissal of the proceedings. After the trial, they asserted the same argument in post-verdict motions for new trial.
A majority of the court of appeals reversed, finding that the letters "effectively exonerated the parents of the only allegations against them regarding S.A.P." Id. at 170. Despite finding the letters "dispositive," the court nevertheless remanded for unspecified further proceedings. Id. at 171.
We hold any error in the trial court's failure to dismiss the proceedings was not preserved. First, estoppel was never pleaded.[3] The Texas rules provide that a defendant's answer "shall set forth affirmatively ... estoppel ... and any other matter constituting an avoidance or affirmative defense." Tex.R. Civ. P. 94. If estoppel is not pleaded, it is waived. See Phillips v. Phillips, 820 S.W.2d 785, 789 (Tex.1991); Concord Oil Co. v. Alco Oil & Gas Corp., 387 S.W.2d 635, 639 (Tex.1965).
*577 Second, estoppel was never submitted to the jury. An unpleaded issue may be tried by consent, but it still must be submitted to the jury. Tex.R. Civ. P. 279 ("Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived."); Boyles v. Kerr, 855 S.W.2d 593, 601 (Tex.1993).
Third, the letters did not conclusively estop the TDPRS from seeking termination. As the court of appeals noted, equitable estoppel generally does not apply to governmental entities. 135 S.W.3d at 169; Leeco Gas & Oil Co. v. Nueces County, 736 S.W.2d 629, 630 (Tex.1987) ("When a governmental unit is exercising governmental powers it is not subject to estoppel."); see also City of Hutchins v. Prasifka, 450 S.W.2d 829, 836 (Tex.1970) (noting municipalities may be subject to estoppel in rare cases when it will not interfere with their governmental functions and manifest injustice would otherwise result).
The court of appeals cited no case invoking the doctrine to prevent a state agency charged with protecting children from doing so. Indeed, we have difficulty imagining how parents found by a jury to have endangered their children can have the "clean hands" needed to estop such a finding. See Champlin Oil & Ref. Co. v. Chastain, 403 S.W.2d 376, 384 (Tex.1965) ("The doctrine of estoppel is for the protection of innocent persons, and only the innocent may invoke it.") (citation omitted).
But even if the doctrine might apply in some parental termination case, it cannot be applied conclusively here. First, the TDPRS letters arguably relate only to a report of abuse on the day S.A.P. was born; they do not promise TDPRS would never attempt termination for conduct that occurred before or after that date or that related to the respondents' other children. The grounds for termination answered affirmatively by the jury were broad enough to include all of the latter.
Second, the letters promise only to destroy evidence in the agency's files, not to refrain from using the same evidence from other sources. The respondents assert TDPRS could not rely at trial on anything it had ever reviewed, but the letters make no such promise. Much of the evidence here came from witnesses who testified at trial and from the respondents' own admissions-and thus would not have been impacted by expunction.
Third, the evidence of detrimental reliance, if any, was far from conclusive. See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 515-16 (Tex.1998) (holding estoppel requires proof of detrimental reliance). The court of appeals found the respondents relied on the letters by cooperating with TDPRS, but the respondents never claimed the TDPRS letters were the reason they did so. Indeed, their theory at trial and on appeal is that TDPRS did not provide them enough services and parental support, a position inconsistent with claiming that their cooperation with the agency was a detrimental change of position.
Further, neither the court of appeals nor the respondents explain why their participation in counseling and other family support services was detrimental. It is hard to see how their chances of regaining custody of S.A.P. would have been increased by refusing to do so.
We recognize the form letters sent by TDPRS have the potential to be misleading if routinely used in circumstances like those here. Given the agency's previous involvement with the parents and the speed with which it acted to remove S.A.P., it is hard to see why it promised to destroy its files almost immediately thereafter. *578 But because estoppel was never submitted to the jury, we hold that the letters alone did not (as the respondents claim) require as a matter of law that the agency return S.A.P. to them and "wait for them to fail."
Accordingly, without hearing oral argument, we reverse the court of appeals' judgment and remand to that court for consideration of the other issues raised on appeal. See Tex.R.App. P. 59.1.
NOTES
[1] The respondents married in the interim between S.A.P.'s birth and the termination trial. S.A.P.'s birth records show his mother's name as Rebecca Williams.
[2] See In re J.F.C., 96 S.W.3d 256, 266 (Tex.2002) (holding reviewing court should view all evidence and resolve all factual disputes in favor of verdict if reasonable jurors could do so).
[3] Respondents mentioned the letters sent by TDPRS in their motions for summary judgment, but a motion for summary judgment is not a pleading. See Tex R. Civ. P. 45(a).