ACCEPTED
15-25-00034-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
10/2/2025 2:56 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00034-CV

# In the Court of Appeals
# for the Fifteenth Judicial District

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
10/2/2025 2:56:47 PM
CHRISTOPHER A. PRINE
Clerk

THE STATE OF TEXAS,

*Appellant*,

*v.*

ALEXANDRA ALVAREZ, JOSHUA LAFOUNTAIN,
CHRISTINE ELLIS, DDS,

*Appellees.*

On Appeal from the
459th Judicial District Court, Travis County

## REPLY BRIEF FOR APPELLANT

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney
General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

AUSTIN KINGHORN
Deputy Attorney General for Civil
Litigation

AMY SNOW HILTON
Chief, Healthcare Program
Enforcement Division

BRIAN VANDERZANDEN
Texas State Bar No. 24081557
Assistant Attorney General
Healthcare Program Enforcement
Division

Counsel for Appellant

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

Table of Contents.................................................................... i

Index of Authorities ............................................................. iii

Introduction.........................................................................1

Argument............................................................................ 2

I.    Appellees Cannot Establish Jurisdiction in this Alternate-Remedy Proceeding .................................................................................... 2

II.    The Allegations in Appellees' Petitions Were Publicly Disclosed ............... 6

    A.    Appellees Fail To Identify Any Allegations That Were Not Disclosed in at Least One of the Public Disclosures .......................................... 6

    B.    The Public Disclosures Do Not Need To Accuse Xerox of "Fraud" To Bar Appellees.......................................................................7

    C.    Statements Made by the State in *Malouf* and Other Provider Cases Cannot Save Appellees from the Public Disclosure Bar...................... 9

    D.    The Timing of the State's Investigation into Xerox's Fraud Has No Bearing on Whether Appellees Are Barred by Public Disclosure....... 11

    E.    There is No Jurisdictional Difference Between the Public Disclosure Bars in the FCA and the TMFPA ...................................................12

    F.    LaFountain and Ellis Are Not Original Sources. ...............................12

        1.    LaFountain did not have "direct" knowledge that was voluntarily disclosed ........................................................................12

        2.    Ellis is not an original source. ...............................................16

            a.    Arguments in separate provider cases do not give Ellis original source status.....................................................16

            b.    Ellis's disclosures to the State do not establish her as an original source..........................................................17

i

III.    LaFountain and Ellis Are Barred by the TMFPA's First-to-File Bar.......... 20

    A.    The Third Court of Appeals Did Not Rule on the Merits of the First-to-File Bar ................................................................... 20

    B.    LaFountain's Mention of Xerox's Activity-Based Compensation Program Cannot Avoid the First-to-File Bar ..................................... 21

    C.    The Two Allegations in Ellis's Petition Identified by Appellees Are Not Distinct Allegations of Fraud ........................................ 24

IV.    The TMFPA Does Not Authorize Awarding Interest Against the State .... 26

V.    Because LaFountain and Ellis Are Not "Original Sources" They Are Not Entitled to a 0-7% Fee Determination ....................................... 29

Prayer ............................................................................... 33

Certificate of Compliance ............................................................ 34

# INDEX OF AUTHORITIES

**Cases**      **Page**

*Abbott v. BP Expl. & Prod., Inc.*, 851 F.3d 384 (5th Cir. 2017) ................................. 12

*Alfonso v. Skadden*, 251 S.W.3d 52 (Tex. 2008) ..................................................... 5

*Bituminous Casualty Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048 (5th Cir. 1996) .... 28

*Brown v. De La Cruz*, 156 S.W.3d 560 (Tex. 2004) ................................................ 4

*Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex. 1985) ........ 27, 28, 29

*Cho ex rel. States v. Surgery Partners, Inc.*, 30 F.4th 1035 (11th Cir. 2022) ............. 26

*City of Hutchins v. Prasifka*, 450 S.W.2d 829 (Tex. 1970) .................................. 10, 17

*Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447 (5th Cir. 1995) ................... 30

*Glaser v. Wound Care Consultants*, 570 F.3d 907 (7th Cir. 2009) ........................... 13

*Hays v. Hoffman*, 325 F.3d 982 (8th Cir. 2003) .................................................... 31

*In re S.A.P.*, 156 S.W.3d 574 (Tex. 2005) ....................................................... 5, 10, 17

*In re Xerox Corp.*, 555 S.W.3d 518 (Tex. 2018) (orig. proceeding) .................... 27, 28

*Jones v. Ignal*, 798 S.W.2d 898 (Tex. App.—Austin 1990, writ denied) ................... 5

*Little v. Shell Expl. & Prod. Co.*, 690 F.3d 282 (5th Cir. 2012) ............................... 19

*Malouf v. State ex rel. Ellis*, 694 S.W.3d 712 (Tex. 2024) ....................................... 9

*Matter of Ament*, 890 S.W.2d 39 (Tex. 1994) ........................................................ 26

*Morgan v. Ebby Halliday Real Estate, Inc.*, 873 S.W.2d 385 (Tex. App.—Fort Worth 1993, no writ) .............................................................................................. 27, 28

*Nazari v. State*, 561 S.W.3d 495 (Tex. 2018) ....................................................... 28

*Origin Bank v. Castellano*, No. 4:21-CV-02173, 2024 WL 169664 (S.D. Tex. Jan. 12, 2024) ...................................................................................................... 27

*Prather v. AT&T, Inc.*, 847 F.3d 1097 (9th Cir. 2017)...............................................16

*Rille v. PriceWaterhouseCoopers LLP*, 803 F.3d 368 (8th Cir. 2015) ........................32

*Rockwell Intern. Corp. v. U.S.*, 549 U.S. 457 (2007)........................................... 10, 16

*Rupert v. McCurdy*, 141 S.W.3d 334 (Tex. App.—Dallas 2004, no pet.) ..................5

*State Department of Highways and Public Transportation v. Bacon*, 754 S.W.2d 279 (Tex. App.—Texarkana 1988, writ denied) ................................................28, 29

*State v. Durham*, 860 S.W.2d 63 (Tex. 1993) ....................................................10, 17

*State v. Ellis*, 681 S.W.3d 501 (Tex. App.—Austin 2023, no pet.) ........... 4, 5, 20, 21

*Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004)....................5

*Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 659 S.W.3d 424 (Tex. 2023) .............................................................................................................. 3, 4

*United States ex rel. Barth v. Ridgedale Elec., Inc.*, 44 F.3d 699 (8th Cir. 1995)........16

*United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371 (5th Cir. 2009) .........................................................................................................25

*United States ex rel. Burke v. St. Jude Med., Inc.*, No. CV 16-3611-SAG, 2021 WL 6135202 (D. Md. Dec. 29, 2021) ....................................................................30

*United States ex rel. Findley v. FPCBoron Emps.' Club*, 105 F.3d 675 (D.C. Cir. 1997) .......................................................................................................... 31

*United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214 (D.C. Cir. 2003)........................................................................................... 22

*United States ex rel. Harman v. Trinity Indus., Inc.*, No. 2:12–CV–00089–JRG, 2014 WL 47258 (E.D. Tex. Jan. 6, 2014) ................................................................14

*United States ex rel. Heath v. AT & T, Inc.*, 791 F.3d 112 (D.C. Cir. 2015) ........22, 23

*United States ex rel. Holloway v. Heartland Hospice, Inc.*, 960 F.3d 836 (6th Cir. 2020) .......................................................................................................... 11

*United States ex rel. Karadsheh v. Fata*, No. 2:13-cv-13333, 2019 WL 6702141 (E.D. Mich. Dec. 9, 2019) ................................................................32

*United States ex rel. LaCorte v. Wagner*, 185 F.3d 188 (4th Cir. 1999) ...................... 2

*United States ex rel. Lam v. Tenet Healthcare Corp.*, 287 F. App'x 396 (5th Cir. 2008) ........................................................................................ 15

*United States ex rel. Merena v. SmithKline Beecham Corp.*, 114 F. Supp. 2d 352 (E.D. Pa. 2000) ........................................................................30

*United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97 (3d Cir. 2000) ................................................................................................30

*United States ex rel. Montgomery v. St. Edward Mercy Med. Ctr.*, No. 4:05-cv-00899, 2007 WL 2904111 (E.D. Ark. Sept. 28, 2007) ................................................. 31

*United States ex rel. Rahimi v. Rite Aid Corp.*, 3 F.4th 813 (6th Cir. 2021).......... 7, 8, 9

*United States ex rel. Reagan v. East Texas Medical Center Regional Healthcare System*, 384 F.3d 168 (5th Cir. 2004) .................................................................. 13

*United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 841 F.3d 927 (11th Cir. 2016) ............................................................................14

*United States ex rel. Wood v. Allergan, Inc.*, 899 F.3d 163 (2d Cir. 2018) ................ 22

*United States v. A.D. Roe Co.*, 186 F.3d 717 (6th Cir. 1999) ..................................... 8

*United States v. L-3 Commc'ns EOTech, Inc.*, 921 F.3d 11 (2d Cir. 2019) ................. 2

*United States v. Wegeler*, 941 F.3d 665 (3d Cir. 2019)............................................ 2

**Statutes**

31 U.S.C. § 3730(d)(1) .........................................................................................30

31 U.S.C. § 3730(e)(4) .........................................................................................30

Tex. Gov't Code 402.004 ...............................................................................10, 17

Tex. Hum. Res. Code §§ 36.002(1), (2).................................25

Tex. Hum. Res. Code § 36.051..........................................3

Tex. Hum. Res. Code § 36.106 ........................................26

Tex. Hum. Res. Code § 36.109(a) ..................................... 2

Tex. Hum. Res. Code § 36.110(b) .............................29, 30, 31

Tex. Hum. Res. Code § 36.110(c) .....................................29

Tex. Hum. Res. Code § 36.113(b) ................................ *passim*

Tex. Hum. Res. Code § 36.113(b)(1) ..............................13, 15

Tex. Ins. Code § 1271.155(a) ......................................... 4

Tex. Rev. Civ. Stat. art. 5069–1.05 § 6(a).......................... 28

**Rules**

Tex. R. App. P. 9.4(e) ...............................................34

Tex. R. App. P. 9.4(i)...............................................34

Tex. R. App. P. 9.4(i)(1)............................................34

Tex. R. Civ. P. 45...................................................5

This case should be dismissed for a lack of subject-matter jurisdiction because Appellees have failed to plead a cause of action that is not barred by sovereign immunity. Appellees have no right to a relator's share determination in this alternate-remedy proceeding as opposed to their original proceedings, where they should have brought their motion.

If allowed to go forward, this case turns on whether Appellees' allegations were publicly disclosed. If they were not, Appellees will be awarded $37,160,865.00, and the only remaining issue is whether they are entitled to an additional $11,044,503.70 in prejudgment interest. If their allegations were publicly disclosed, because Alvarez does not claim to be an "original source," Appellees are only eligible for a 0-7% award determination if LaFountain and Ellis prove they are *both* "original sources" *and* they survive the first-to-file bar. (And even then, because Appellees did not provide significant information or play a role in advancing *State v. Xerox* to litigation, they are entitled to 0%.)

Appellees fail to identify a single allegation in their petitions that was not publicly disclosed in at least one of the disclosures identified in the State's opening brief. Instead, Appellees rely upon statements made by the State in different cases and argue about the date the State's investigation began. But neither is relevant to

1

the issue of public disclosure. Neither LaFountain nor Ellis qualify as "original sources," and both are barred by the first-to-file bar. Accordingly, Appellees are entitled to nothing.

ARGUMENT

## I. Appellees Cannot Establish Jurisdiction in this Alternate-Remedy Proceeding.

Although Appellees contend they "must be able to vindicate their statutory right to a share of a settlement that resolves their claims" (at 25), the alternate-remedy provision of the TMFPA does not confer a relator with the unfettered right to a determination of the relator's share within the alternate proceeding. *See* Tex. Hum. Res. Code § 36.109(a). Appellees fail to explain why they cannot "vindicate" their purported rights to a relator's share in their original actions, which is routinely required in federal False Claims Act cases. *See United States ex rel. LaCorte v. Wagner*, 185 F.3d 188, 191 (4th Cir. 1999); *United States v. Wegeler*, 941 F.3d 665, 672 (3d Cir. 2019); *United States v. L-3 Commc'ns EOTech, Inc.*, 921 F.3d 11, 30 (2d Cir. 2019). While Appellees point out these cases have factual distinctions (at 24-25), each supports the State's position that the appropriate proceeding in which to seek a relator's share is the relator's original proceeding, not the alternative-remedy

proceeding.[1] Appellees' argument that precluding them from seeking a relator's share determination in the State's alternate-remedy proceeding would "leave[] to the State's discretion alone whether and in what amount to pay an award" fails to contemplate relators' right to a share in their original proceedings and must therefore be rejected.

Appellees argue that "the TMFPA expressly entitles them to a share of the proceeds." Appellees' Br. 19-20. The TMFPA, however, expressly provides only four causes of action. *See* Tex. Hum. Res. Code § 36.051 (allowing attorney general to seek injunctive relief relating to violation of section 36.002); 36.052 (allowing attorney general to seek civil remedies and penalties for violation of 36.002); 36.101 (authorizing private person to bring a cause of action for violation of 36.002); and 36.115(b) (creating cause of action for retaliation against *qui tam* relator). The fact that the Legislature failed to provide a cause of action allowing private enforcement of Section 36.110 is dispositive of the issue.

The Texas Supreme Court has "ma[de] clear that the bar for implying a private cause of action is high." *Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 659 S.W.3d 424, 431 (Tex. 2023). "When a private cause of action is alleged to derive

---

1 Although Alvarez nonsuited her original case (Appellees' Br. 11) LaFountain and Ellis did not. Appellees represent that they have "a sharing agreement" (Appellees' Br. 53) which gives Alvarez a portion of any recovery.

3

from a constitutional or statutory provision, our duty is to ascertain the drafters' intent." *Id.* "[T]he existence of the private cause of action must be clearly implied in the statutory text." *Id.* In *Molina*, the Texas Supreme Court was asked whether a cause of action may be implied by a statutory provision that unambiguously entitled "physicians or providers" to reimbursement from insurance companies for "emergency care performed by non-network physicians or providers." *Id.* at 427 (quoting Tex. Ins. Code § 1271.155(a)). The Court explained that even though the statute at issue provided a "textual entitlement to compensation," it did not "clearly impl[y]" a cause of action. *Id.* at 431-32. "The very balance of state governmental power imposed by the framers of the Texas Constitution depends on each branch, and particularly the judiciary, operating within its jurisdictional bounds. By implying a private cause of action in a statute that did not provide for one, the [lower court] exceeded those bounds." *Id.* at 432 (quoting *Brown v. De La Cruz*, 156 S.W.3d 560, 569 (Tex. 2004)).

Appellees argue the issue of the State's sovereign immunity was resolved in *State v. Ellis*, 681 S.W.3d 501 (Tex. App.—Austin 2023, no pet.). There, the State argued that sovereign immunity deprived the trial court of jurisdiction to hear LaFountain and Ellis's motion because they were not the first to file. *Id.* at 504. The Third Court held that sovereign immunity does not apply to Appellees' joint motion

4

because the joint motion is not a "suit at all." 681 S.W.3d at 512 n.8. The Third Court's opinion did not address whether Appellees' joint motion may properly form the sole basis of this severed cause because that issue was not before the court.

While Appellees contend that the invited error doctrine precludes the State from challenging subject matter jurisdiction (at 22), a party cannot waive subject-matter jurisdiction, and sovereign immunity deprives a trial court of jurisdiction. *Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008) ("Subject-matter jurisdiction cannot be waived, and can be raised at any time."); *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224–25 (Tex. 2004).

Appellees next argue that their joint motion seeking a relator share of the Xerox proceeds "creates a cause of action." Appellees' Br. 22. A motion, however, is not a pleading and cannot by itself create a cause of action. *In re S.A.P.*, 156 S.W.3d 574, 576 n.3 (Tex. 2005). "The only pleadings in a cause are by petition and answer." *Jones v. Ignal*, 798 S.W.2d 898, 900 n.1 (Tex. App.—Austin 1990, writ denied) (citing Tex. R. Civ. P. 45). A "motion" is "an application for an order," which is entirely different from a "pleading" that is "a statement … of the plaintiff's cause of action." *Rupert v. McCurdy*, 141 S.W.3d 334, 339 (Tex. App.—Dallas 2004, no pet.)

5

## II. The Allegations in Appellees' Petitions Were Publicly Disclosed.

### A. Appellees Fail To Identify Any Allegations That Were Not Disclosed in at Least One of the Public Disclosures.

Appellees do not identify any allegations that were not publicly disclosed in at least one of the public disclosures—nor can they. Allegations that Medicaid funds were approved by Xerox even though the braces were for cosmetic or aesthetic reasons was publicly disclosed. *See* Ex. G-4; C.R.5197, at 2:00-2:10; C.R.4553. Allegations that Xerox did not comply with Medicaid criteria and guidelines was also publicly disclosed. *See* C.R.4543–44; 4482–83; 4546–49; 4507–08. Likewise, the fact that Xerox was approving improper claims was publicly disclosed. *See* Ex. G-4; C.R.5197 at 2:00-2:10; Ex. G-8; C.R.5197 at 4:10–4:17. As was the allegation that Xerox was approving claims without properly reviewing them first, *i.e.*, "rubber stamping" them. *See* C.R.4543–44; C.R.4553; Ex. G-8; C.R.5197 at 4:10–4:17.

Appellees argue that several of the public disclosures describe orthodontic claims being improperly approved by the "State," not Xerox. Appellees' Br. 28-44. Every public disclosure that references the "State" approving orthodontic claims is plainly referring to the contractor tasked with reviewing claims, *i.e.*, Xerox, as no other State contractor processed orthodontic claims for Texas Medicaid at that time. *See* C.R.6440 ¶ 1.04. For example, Appellees argue that the May 13, 2011, WFAA article does not explicitly mention "Xerox" by name. Appellees' Br. 33 n.6. That

article, however, refers to "claims [being] processed by an outside contractor in Texas," which could refer to only Xerox. C.R.4543.

Appellees go to great lengths arguing that each *individual* public disclosure fails to disclose some allegation of fraud. Appellees' Br. 28-44.[2] For example, Appellees point out that some of the earlier public disclosures did not mention ACS/Xerox by name (*see, e.g.*, *Id.* at 30, 33-34, 40) only to concede that the November 11, 2011, WFAA broadcast "first named" ACS/Xerox. *Id.* at 50. There is no requirement, however, that all allegations of fraud be contained in a single disclosure. *United States ex rel. Rahimi v. Rite Aid Corp.*, 3 F.4th 813, 824 (6th Cir. 2021) (stating that "a public disclosure can also be piecemeal so long as the multiple sources of information reveal the allegation of fraud and its essential elements"). Because Appellees fail to identify any essential elements of fraud that were not publicly disclosed in at least one of the public disclosures, they must be barred.

### B. The Public Disclosures Do Not Need To Accuse Xerox of "Fraud" To Bar Appellees.

Appellees argue that the public disclosures do not specifically accuse Xerox of committing "fraud." Appellees' Br. 33, 34, 43. Not true. The August 30, 2011,

---

[2] While Appellees take issue with each individual public disclosure, the November 11, 2011, WFAA broadcast (Ex. G-8; C.R.5197) so clearly discloses all the fraudulent allegations that Appellees have no choice but to fall back on the argument that "LaFountain and Ellis are original sources." Appellees' Br. 42.

HHSC news release explicitly states that "[a]ny cases of suspected *fraud* will be referred to the Office of the Attorney General." C.R.4507–08 (emphasis added). The December 16, 2011, WFAA broadcast does so, too. Ex. G-9, C.R.5197, at 1:41–1:50 ("I gotta tell you if there was *fraud* taking place somebody needs to be accountable for that, and I'm not talking about just paying the money back." (emphasis added)). Regardless, the public disclosures do not need to use the word "fraud" to bar Appellees. *Rahimi*, 3 F.4th at 823 (citing *United States v. A.D. Roe Co.*, 186 F.3d 717, 724 (6th Cir. 1999) ("[P]ublicly disclosed documents need not use the word 'fraud,' but need merely to disclose information which creates 'an inference of impropriety.'")).

As even Appellees acknowledge, the public disclosures:

- state[d] that Xerox "took advantage" (at 32);

- disclosed "severe overutilization" (at 33);

- described "questionable Medicaid spending" (at 37);

- call[ed] "ACS 'a virtual assembly line of claims processing'" (at 41);

- warned viewers that "your tax dollars aren't working. You're paying for services that shouldn't be paid for" (*id.*); and

- stated that the "Medicaid orthodontic benefit is 'abused'"[3] (at 42).

By Appellees' own admission, there can be no question that the public disclosures create "an inference of impropriety" on ACS/Xerox's behalf, which is all that is required to bar Appellees. *Rahimi*, 3 F.4th at 823.

### C. Statements Made by the State in *Malouf* and Other Provider Cases Cannot Save Appellees from the Public Disclosure Bar.

Appellees make much of the fact that the State argued that Ellis was a "bona fide relator" and that "there were no public disclosures" that would have barred Ellis in severed *qui tam* cases she brought against dental providers. Appellees' Br. 11, 26. As the State explained in its opening brief, Ellis named several providers in her *qui tam* petition, including Dr. Richard Malouf, Harlingen Family Dentistry, and ASDC Holdings, LLC. *See* Appellant's Br. 41-42 (citing C.R.7668-71); C.R.173; CR.3129. The allegations in the provider cases, however, were entirely different from the allegations against Xerox. For example, in *Malouf*, Dr. Malouf was alleged to have used his provider number for services performed by other dentists. *Malouf v. State ex rel. Ellis*, 694 S.W.3d 712, 717 (Tex. 2024). That fact was never publicly

---

3 This news report quotes Ellis. Ex. G-9, C.R.5171 at 0:31-0:33. There is no exception for a relator's own public disclosure, however, so Ellis's own public statements bar her just the same as the other public disclosures. *See* Tex. Hum. Res. Code § 36.113(b) (2011).

disclosed prior to the lawsuit. That Ellis may have been a bona fide relator in the provider cases does not mean that she – or the other appellees – is a bona fide relator here. *See Rockwell Intern. Corp. v. U.S.*, 549 U.S. 457, 476 (2007).

But even if the State had previously taken the position that Ellis was a "bona fide relator" in the Xerox case (which it did not do), the State is not estopped from now challenging her status. Tex. Gov't Code 402.004 ("An admission, agreement, or waiver made by the attorney general in an action or suit to which the state is a party does not prejudice the rights of the state."); *see also S.A.P.*, 156 S.W.3d at 577 (stating that "equitable estoppel generally does not apply to governmental entities"); *State v. Durham*, 860 S.W.2d 63, 67 (Tex. 1993) ("[T]he State in its sovereign capacity, unlike ordinary litigants, is not subject to the defenses of limitations, laches, or estoppel."); *City of Hutchins v. Prasifka*, 450 S.W.2d 829, 835 (Tex. 1970) ("The general rule has been in this state that when a unit of government is exercising its governmental powers, it is not subject to estoppel."). The State's statements about Ellis's relator status in the provider cases do not estop the State from challenging her relator status here.

**D.** **The Timing of the State's Investigation into Xerox's Fraud Has No Bearing on Whether Appellees Are Barred by Public Disclosure.**

Appellees argue that "Texas only began investigation Xerox's TMFPA violations in June 2012." Appellees' Br. 26. Not so. The State's investigation began in January 2011. *See* C.R. 1161-62 (State Action Request notifying Xerox of "performance issues with the prior authorizations of orthodontic requests"). The 2012 date cited by Relators is when the Texas "Attorney General's Office, together with the Texas Health & Human Services Commission (HHSC) and the HHSC-Office of Inspector General *formed a dental and orthodontic fraud task force*," not the date when the State's investigation began. CR.211 (emphasis added). The date the task force was formed was included (incorrectly) in the Xerox settlement agreement as the date when "the State of Texas initiated an investigation" against Xerox (C.R.27), rather than the actual date the State launched its investigation by sending Xerox the State Action Request on January 19, 2011.

Regardless, the date the State initiated its investigation into Xerox's conduct has no bearing on whether Appellees are barred by public disclosure. The public disclosure bar applies "once a general disclosure of fraud has been made," in which case, courts "presume that the government is on notice." *United States ex rel. Holloway v. Heartland Hospice, Inc.*, 960 F.3d 836, 848 (6th Cir. 2020). There is no requirement that the State have actual knowledge of fraud or even be aware of the

public disclosures for the bar to apply. *See* Tex. Hum. Res. Code § 36.113(b). Thus, even if Appellees are correct, and the State's investigation began in June 2012, Appellees would still be barred because all the allegations in their petitions were publicly disclosed.

**E. There is No Jurisdictional Difference Between the Public Disclosure Bars in the FCA and the TMFPA.**

Appellees argue that the TMFPA's public-disclosure bar differs from the FCA public-disclosure bar "to favor allowing even [TMFPA] cases with significant public disclosures to go forward." Appellees' Br. 28. Appellees base this assertion on the false premise that the FCA public disclosure bar is "jurisdictional" while the TMFPA's public disclosure bar is not. *Id.* The FCA was amended in 2010. *Abbott v. BP Expl. & Prod., Inc.*, 851 F.3d 384, 387 n.2 (5th Cir. 2017) ("We agree with our sister circuits that the public disclosure bar is no longer jurisdictional."). Because neither public disclosure bar is jurisdictional, Appellees' argument that the TMFPA's public disclosure bar is easier to circumvent must be rejected.

**F. LaFountain and Ellis Are Not Original Sources.**

**1. LaFountain did not have "direct" knowledge that was voluntarily disclosed.**

Appellees argue that LaFountain is an original source based solely on his uncorroborated, self-serving testimony that he "addressed his concerns about Xerox" at a meeting with OIG that allegedly took place on some unspecified date

"in 2011." Appellees' Br. 7, 47. Regardless, LaFountain cannot be an original source because he did not have "direct" knowledge of the fraud alleged in his petition with respect to Xerox. *See* Tex. Hum. Res. Code § 36.113(b)(1).

Appellees contend that LaFountain "learned the information on which he based his allegations on the job while his employer [Bear Creek] exploited the very fraud on Medicaid that he alleged Xerox committed." Appellees' Br. 48. This is secondhand knowledge and not "direct." Appellees cite *Glaser v. Wound Care Consultants*, 570 F.3d 907 (7th Cir. 2009), for the proposition that personal involvement in Medicaid by itself is sufficient to confer original source status. Appellees' Br. at 48. The relator in *Glaser*, however, was found ***not*** to be an original source, because even though she had personally been treated by a physician's assistant and not a doctor, she did not directly witness the fraudulent claims being billed. *Glaser*, 570 F.3d at 921. Likewise, LaFountain saw Bear Creek's claims being approved, but he did not directly witness Xerox's rubber-stamping or its failure to hire qualified staff. Appellees cite (at 48) to *United States ex rel. Reagan v. East Texas Medical Center Regional Healthcare System*, but again, that relator was found ***not*** to be an original source. 384 F.3d 168, 179 (5th Cir. 2004) (stating that "second-hand information" may not be "converted into 'direct and independent knowledge'

13

simply because the plaintiff discovered through investigation or experience what the public already knew").

In a third case relied upon by Appellees, *United States ex rel. Harman v. Trinity Indus., Inc.*, the relator was found to be an original source in a case involving defective highway guardrails. No. 2:12–CV–00089–JRG, 2014 WL 47258, at *6 (E.D. Tex. Jan. 6, 2014). The relator learned, "through [his] own inspection," that the guardrails were defective, having "inspected approximately 100 crash sites in several states and took measurements of approximately 125 [guardrails] on highways throughout the nation." *Id*. at *4. In contrast, LaFountain admitted that his knowledge of Xerox's internal operations came not from his personal observations, but second-hand from conversations he had with his employer or with Dr. Bob Anderton.[4] CR.4850 at 35:16-CR.4851 at 36:1. This amounts to "indirect" knowledge since it was obtained from others. *See United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 841 F.3d 927, 936 (11th Cir. 2016) (ruling that hearing about improper billing practices from coworkers in another department is "on its face indirect"). Any knowledge LaFountain obtained from his employer or Dr. Anderton is not direct because it was "based on knowledge received from other

---

4 Dr. Anderton was a dentist who provided training at Bear Creek. CR.4851 at 36:25-CR.4852 at 37:4.

persons." *United States ex rel. Lam v. Tenet Healthcare Corp.*, 287 F. App'x 396, 400-01 (5th Cir. 2008).

LaFountain testified that his allegations concerning Xerox's conduct was predicated on him seeing Bear Creek's claims being approved. CR.4848 at 33:17-19 ("That's based on me seeing what was submitted to them and what they approved."). LaFountain testified that he never had any dealings with Xerox or knew anyone who worked there. CR.4844-46, at 29:1-31:16. To the extent LaFountain had firsthand knowledge of anything, it was of fraudulent documentation submitted by his employer, Bear Creek, to Texas Medicaid—not of Xerox's actions. CR.4848 at 33:17-19. In other words, what LaFountain personally witnessed was Bear Creek submitting fraudulent orthodontic claims (which he alleged in his petition), not Xerox rubber-stamping claims, employing unqualified personnel, or failing to get dental director approval when required—*i.e.*, the allegations in the State's petition against Xerox. *Id.*

Moreover, LaFountain did not "voluntarily" disclose his findings to the State. *See* Tex. Hum. Res. Code § 36.113(b)(1). When he spoke to OIG in 2011 it was "*after it initiated an investigation into his employer*" Bear Creek. Appellees' Br. 47 (emphasis added). The fact that Xerox was approving orthodontic claims that did not qualify for reimbursement was publicly disclosed throughout 2011. *See*

15

C.R.4543–44, 4482–83, 4546–49, 4507–08. Appellees argue that OIG was investigating different fraud, but because LaFountain's disclosure was done in response to a government audit, they were not "voluntary." *See United States ex rel. Barth v. Ridgedale Elec., Inc.*, 44 F.3d 699, 704 (8th Cir. 1995) (finding that a relator who had been approached by a government investigator did not voluntarily disclose his findings); *Prather v. AT&T, Inc.*, 847 F.3d 1097, 1108 (9th Cir. 2017) (party was found to not have voluntarily disclosed information after his employer told him to report it to the government).

### 2. Ellis is not an original source.

#### a. Arguments in separate provider cases do not give Ellis original source status.

Appellees make much of the fact that the State argued that Ellis was an original source in cases she brought against dental providers. Appellees' Br. 48-51. As the State explained in its opening brief, Ellis named several providers in her *qui tam* petition. Appellant's Br. 41-42 (citing C.R.7668-71); C.R.173; CR.3129. While the State intervened in those cases and defended Ellis as a relator, its decision to do so did not confer original source status on Ellis with respect to the State's *Xerox* allegations. Appellant's Br. 41-42 (citing *Rockwell Intern.*, 549 U.S. at 476).

Even if State had previously taken the position that Ellis was an original source in the *Xerox* case (which it did not do) the State is not estopped from now challenging

her status as an original source. *See* Tex. Gov't Code 402.004; *see also S.A.P.*, 156 S.W.3d at 577; *Durham*, 860 S.W.2d at 67; *Prasifka*, 450 S.W.2d at 835.

### b. Ellis's disclosures to the State do not establish her as an original source.

Appellees identify two disclosures made by Ellis to the State, but neither establishes her as an original source. First, Appellees argue that "in 2011 [Ellis] urged OIG to investigate Xerox, and was rebuffed." Appellees' Br. 50. To qualify as an original source, Ellis was required to provide "information on which the allegations are based" or provide information that "materially adds to the publicly disclosed allegations." Tex. Hum. Res. Code § 36.113(b). Merely "urging OIG to investigate" Xerox satisfies neither. This alleged "urging" does not provide any "information" at all.

Second, Appellees state that Ellis "starting in January 2012, urg[ed] Senator Nelson's committee to investigate Xerox and its policy of rubber-stamp approval." Appellees' Br. 50 (citing Feb. 7, 2012, email). That email, however, fails to provide any information that satisfies the "original source" requirement. *See* CR.6660. Instead, based on the orthodontic claims Texas Medicaid hired her to review, Ellis's email to the Senator states that Xerox "missed this scoring issue" and surmises that "I don't think they even looked at the scoring sheet." *Id.* She guesses that "[t]here had to have been a rubber stamp approval" process, noting that "[t]here have been

17

rumors of an unofficial policy [at Xerox] authorizing all orthodontics" claims. *Id.* She notes that "both the OIG representative and I independently came to the conclusion that these billed codes have to be allowed due to a technicality in the way that the medicaid manu[a]l is written." *Id.* "I would suggest that your committee find out who is responsible for writing the orthodontic part of the medicaid manu[a]l." *Id.* She questions "[d]id they actually get the dental director approval or just rubber stamp that too?" *Id.* At best, the evidence shows that Ellis urged Senator Nelson's office to continue investigating Xerox to get to the bottom of the issue, but there is no evidence that Ellis provided Senator Nelson's committee with information on which the eventual allegations against Xerox were based or that materially added to the publicly disclosed allegations. Tex. Hum. Res. Code § 36.113(b).

Appellees make much of the fact that Ellis "suggested that WFAA investigate ACS/Xerox" and that Ellis provided reporter Byron Harris "both factual information and expert analysis." Appellees' Br. 50, 9. Any information Ellis provided Byron Harris at WFAA is irrelevant to an original source analysis, as the statute makes clear that the information at issue must be provided to the ***State***. *See* Tex. Hum. Res. Code § 36.113(b). Appellees' argument that Ellis is an original source because she provided information to Byron Harris at WFAA must be rejected.

Appellees state that Ellis was hired by HHSC-OIG to investigate orthodontic fraud "[a]s a result of one of her appearances on WFAA." Appellees' Br. 9. Both of Ellis's alleged disclosures to the State, however, occurred *after* she was retained as a contractor. C.R.7495 (136:10-12) (stating that disclosure to Dr. Alfaro at HHSC-OIG occurred "while I was a contractor. I would say it was multiple times during the time period I was a contractor. But I can't tell you an exact date"). Because Dr. Ellis's disclosures to the State occurred after she was contracted to investigate fraud, her disclosures cannot be "voluntary." *Little v. Shell Expl. & Prod. Co.*, 690 F.3d 282, 294 (5th Cir. 2012) (stating that "the fact that a relator 'was employed specifically to disclose fraud is sufficient to render his disclosures nonvoluntary'").

In sum, as the State explained in its opening brief (at 37-42), Ellis is not an original source because she did not have "direct and independent" knowledge, and the information was not "voluntarily provided" because Texas Medicaid retained her as a contractor. Ellis is barred from being an original source for the additional reason that she failed to disclose to the State "information on which the allegations are based" or information that "materially adds to the publicly disclosed allegations." Tex. Hum. Res. Code § 36.113(b).

**III. LaFountain and Ellis Are Barred by the TMFPA's First-to-File Bar.**

    **A. The Third Court of Appeals Did Not Rule on the Merits of the First-to-File Bar.**

LaFountain and Ellis are barred by first-to-file because their allegations were set forth in the earlier Alvarez petition. Appellees argue that the Third Court of Appeals ruled on the merits of the first-to-file bar when the State appealed its plea to the jurisdiction (at 51) but that is wrong. The State's plea to the jurisdiction argued that the Court lacked jurisdiction to adjudicate LaFountain and Ellis's entitlement to a relator share. C.R.2596-2623. The trial court denied the plea, and the Third Court of Appeals affirmed, concluding "that the trial court has subject matter jurisdiction to adjudicate the merits of [Appellees'] joint motion." *Ellis*, 681 S.W.3d at 504.

While the "TMFPA . . . contemplates a fact-intensive inquiry by the trial court to determine whether the [first-to-file bar] appl[lies]," *id.* at 514, the Third Court of Appeals did not perform such an inquiry. Indeed, the Third Court of Appeals quoted the trial court in ruling that "[w]hether and to what percent—whether any relator is entitled at all or what percentage of any relator share each of these relators may be entitled to is a question that the parties in this case can decide by agreement or I will decide at the appropriate time after proper argument and briefing and all of that." *Id.* at 510 n.7. "At this stage of the case … even if we were

to conclude that the first-to-file bar is jurisdictional, we would conclude that the State did not *conclusively* establish that [Appellees'] *qui tam* actions were barred by the first-to-file provision." *Ellis*, 681 S.W.3d at 516 (emphasis added). In other words, the Court held that because the trial court had yet to conduct a fact-intensive inquiry, the State could not "conclusively" establish that the first-to-file bar applied "at this stage of the case." *Id.* Instead of ruling on the merits of the first-to-file issue, the Court of Appeals held that there was a fact question that defeated the plea to the jurisdiction. *Id.*

### B. LaFountain's Mention of Xerox's Activity-Based Compensation Program Cannot Avoid the First-to-File Bar.

LaFountain is barred by the first-to-file bar because the fraudulent scheme alleged in his petition was already alleged by Alvarez. Appellees point to a single sentence in LaFountain's 26-page petition that they contend avoids the bar: "Defendant ACS amazingly had in place an 'activity based compensation' ["ABC"] program, meaning the people processing the claims were paid by the number of claims processed, so they had no incentive to closely analyze and reject False Claims!" Appellees' Br. 56 (citing CR.6338-39). Reference to Xerox's ABC program, however, merely provides an additional detail relating to the same fraudulent scheme described in Alvarez's petition. Without the allegations already included in the Alvarez petition, the fact that Xerox provided financial incentives for

employees to review claims quickly is not indicative of fraud—it is simply an "additional or somewhat different fact[] or information" that cannot survive the first-to-file bar. *United States ex rel. Heath v. AT & T, Inc.*, 791 F.3d 112, 121 (D.C. Cir. 2015) (quoting *United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 217 (D.C. Cir. 2003)); *see also United States ex rel. Wood v. Allergan, Inc.*, 899 F.3d 163, 168-69 (2d Cir. 2018) (broader or more detailed allegations insufficient to overcome first-to-file bar).

Appellees argue (at 57) that ABC "prevented [Xerox employees] from properly reviewing *all* authorization requests," but that is not what LaFountain alleged. LaFountain alleged that, while Xerox employees "had no incentive to closely analyze and reject" claims, there was never any allegation that ABC ***prevented*** them from reviewing those claims accurately or appropriately. *See* CR.6338-39. ABC merely "incentivized employees to process more [prior authorization] requests in less time." CR.4422 ¶21. Indeed, the fact that Xerox incentivized the fast review of claims is not—by itself—an allegation that targets a factually distinct type of fraud, or for that matter, any type of fraud at all.

Appellees rely heavily on *Heath*, but that case involved two complaints that targeted factually distinct types of frauds. 791 F.3d 121. In *Heath*, the second complaint alleged "a different and more far-reaching scheme to defraud the federal

22

government through service contracts entered into across the Nation, and then to cover up that fraud." *Id.* In contrast, the first "complaint discloses nothing more than the rogue actions of individuals within a single AT&T subsidiary and their specific, overt misrepresentations." *Id.* at 121-22. "Nothing in the [first] complaint would have alerted the United States government to a nationwide scheme centered in AT&T's corporate headquarters of mischarging the E–Rate program and subsequently concealing those overpayments." *Id.* at 122. *Heath* is distinguishable because Xerox's ABC program is not a distinct fraudulent scheme. It is simply additional information that cannot survive a first-to-file challenge. *See id.* at 121.

Appellees point out (at 56) that the State described the ABC program in its own TMFPA petition. That the State included a description of the ABC program in its lawsuit against Xerox does not affect the Court's analysis, because the existence of the ABC program—standing alone—is not indicate of any kind of fraud. Regardless, as Appellees concede (at 52), the allegations in the State's petition are irrelevant as "first-to-file challenges are decided by comparing the four corners of the [Alvarez and LaFountain] petitions alone"—and not by reference to the State's petition.

Finally, Appellees do not dispute that even before LaFountain filed his petition, Alvarez sent a letter to the State disclosing that Xerox had an "activity

based compensation" plan that paid employees "based upon the number of claims processed." CR.3941. Instead, Appellees argue (at 57) that Alvarez's disclosure letter cannot legally bar a later-filed petition, but Appellees miss the point. The disclosure letter proves that Alvarez was aware of the ABC program when she drafted her petition. If ABC was a distinct allegation of fraud, as Appellees suggest, Alvarez surely would have included it in her petition. The fact that she did not supports the State's position that it was merely "additional information" insufficient to overcome a first-to-file challenge.

### C. The Two Allegations in Ellis's Petition Identified by Appellees Are Not Distinct Allegations of Fraud.

Appellees identify two allegations in Ellis's petition that they contend survive the first-to-file bar. First, Alvarez alleged that Xerox used unqualified and untrained staff to review claims "for cosmetic braces and children under 12." Appellees' Br. 58. Appellees contend that only Ellis alleged that Xerox used unqualified and untrained staff to review "every request … regardless of whether they were for cosmetic braces or children under 12." *Id.* at 58. The Alvarez petition, however, succinctly conveys that the unqualified and untrained Xerox staff was reviewing *all* the claims they were contracted to review, not just claims for cosmetic braces and children under 12. *See* CR.3913 (¶ 29) ("The claims that are submitted are processed by Defendant ACS [Xerox]."); CR.3923 (¶ 51) (alleging that ACS contracted with

24

HHSC "to process Medicaid claims"). The Alvarez petition does not imply, as Appellees suggest, that *different* Xerox staff was reviewing the remainder of the dental claims. Thus, the Alvarez petition discloses precisely the information Appellees claim is distinct in Ellis's petition. Moreover, even if Alvarez had not disclosed the fact that the same Xerox staff reviewed all orthodontic claims, that is simply additional information relating to the same fraudulent scheme alleged by Alvarez. It is not a distinct allegation of fraud sufficient to survive a first-to-file challenge. *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 378 (5th Cir. 2009).

Second, Appellees argue that only Ellis alleged that Xerox "misrepresented material facts and knowingly concealed" from the State the fraud alleged in Alvarez's petition. Appellees' Br. 58. In other words, while Alvarez fully explained that Xerox was defrauding the State, Ellis made the unremarkable claim that Xerox lied about, and concealed, that very same fraud from the State, which is a fact that is almost certainly true in every Medicaid fraud case and could be easily inferred when reading the Alvarez petition. Again, Appellees argue (at 59) that the State included these same facts in its own TMFPA petition. (The language cited by Appellees is taken directly from the TMFPA itself. *See* Tex. Hum. Res. Code §§ 36.002(1), (2).) Regardless, while the State's petition may have included some of the same facts that

25

were also in the Ellis petition, their inclusion does not change the fact that Ellis must show these facts are distinct element of fraud and not merely additional information. Even Appellees concede (at 52) that "first-to-file challenges are decided by comparing the four corners of the [Alvarez, LaFountain, and Ellis] petitions alone."

In sum, neither of the two Ellis allegations are "distinct allegations of fraud" because both rely on the same facts underlying the Alvarez petition. Tex. Hum. Res. Code § 36.106; *see also Cho ex rel. States v. Surgery Partners, Inc.*, 30 F.4th 1035, 1044 (11th Cir. 2022) (barring a second-filed complaint that did not "meaningfully magnify the scope or pervasiveness of the scheme"). "[T]he government was already alerted to that scheme, and would have been equipped to investigate" the additional allegations in the second-filed compalint. *Id.*

## IV. The TMFPA Does Not Authorize Awarding Interest Against the State.

When a statute such as the TMFPA creates a cause of action, remedies are limited only to what is specifically provided for in the statute. *Matter of Ament*, 890 S.W.2d 39, 41 (Tex. 1994) (per curiam). While not provided by the TMFPA, the trial court nevertheless awarded Appellees $11,044,503.70 in prejudgment interest. C.R.9534. This was error.

Appellees agree that they are not entitled to *statutory* prejudgment interest, but argue they are entitled to *equitable* prejudgment interest, relying heavily on

*Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex. 1985). Appellees' Br. 60. *Cavnar*, however, involved awarding prejudgment interest in a common-law negligence case. 696 S.W2d at 554. *Cavnar* based its prejudgment interest holding on the "primary objective of awarding damages in civil actions" which is "to compensate the injured plaintiff, rather than to punish the defendant." *Id.* at 552 (citing W. Keeton, et al., *Prosser and Keeton on the Law of Torts* § 2 (5th ed. 1984)). But the TMFPA is not a damages statute. *In re Xerox Corp.*, 555 S.W.3d 518, 526-27 (Tex. 2018) (orig. proceeding) (holding that TMFPA remedies "are not damages"). Accordingly, *Cavnar* does not apply.

Appellees also rely on *Origin Bank v. Castellano*, No. 4:21-CV-02173, 2024 WL 169664 (S.D. Tex. Jan. 12, 2024), but like *Cavnar*, that case involved common-law causes of action for damages. In addition to violations of the Texas Theft Liability Act, the plaintiff alleged conspiracy to commit bank fraud, conversion, and common-law fraud. *Origin Bank*, 2024 WL 169664, at *1. There are no common law fraud claims – or any other equitable claims – in this case.

Appellees likewise rely upon *Morgan v. Ebby Halliday Real Estate, Inc.*, but this case does not aid them either. 873 S.W.2d 385 (Tex. App.—Fort Worth 1993, no writ). The plaintiffs in *Morgan* were awarded prejudgment interest under a statute that, unlike the TMFPA, explicitly provided for prejudgment interest. "Under this

27

statute, 'prejudgment interest accrues on the amount of the judgment during the period beginning on the 180th day after the date the defendant receives written notice of a claim or on the day the suit is filed, whichever occurs first, and ending on the day preceding the date judgment is rendered.'" *Id.* at 387 (citing Tex. Rev. Civ. Stat. art. 5069–1.05 § 6(a)).

Appellees cite *Bituminous Casualty Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048 (5th Cir. 1996), as holding that "under Texas law an equitable award of prejudgment interest should be granted to a prevailing plaintiff in all but exceptional circumstances." Appellees' Br. 60. *Bituminous* holds that, consistent with *Cavnar*, prejudgment interest is awarded "when the trier of fact finds that ***damages*** accrued." *Id.* at 1057 (emphasis added). Damages cannot accrue here since the TMFPA does not award damages. *Xerox*, 555 S.W.3d at 526-27, 535; *Nazari v. State*, 561 S.W.3d 495, 509-10 (Tex. 2018).

Finally, Appellees cite *State Department of Highways and Public Transportation v. Bacon*, 754 S.W.2d 279 (Tex. App.—Texarkana 1988, writ denied), for the proposition that prejudgment interest is available against the State even when not provided for in the asserted statute. Appellees' Br. 61. *Bacon* relies on the "general rule laid down in *Cavnar* . . . [that] prejudgment interest is recoverable on a wrongful death claim against a private person." 754 S.W.2d at 282. Just as this TMFPA matter

is distinguishable from *Cavnar*, it is also distinguishable from *Bacon*, since this matter does not involve wrongful-death claims, personal-injury claims, or damages. *Id.* at 280. The holding in *Bacon* was unique since it concerned specifically whether the State was liable for prejudgment interest under the Texas Tort Claims Act. *Id.* at 282. Because the Texas Tort Claims Act did not lay out an "exact compensation scheme," but merely put a cap on total recovery, the *Bacon* court found the statute *did* allow for prejudgment interest. *Id.* Unlike the Tort Claims Act, the TMFPA *does* lay out an exact compensation scheme afforded to relators. *See, e.g.*, Tex. Hum. Res. Code § 36.110(c) (providing a specified range of statutory recovery plus "reasonable expenses, reasonable attorney's fees, and costs that the court finds to have been necessarily incurred"). Thus, *Bacon* does not apply here.

V.  **Because LaFountain and Ellis Are Not "Original Sources" They Are Not Entitled to a 0-7% Fee Determination.**

A relator barred by public disclosure is entitled to a 0-7% fee determination under Section 36.110(b) only if proven to be an "original source." LaFountain and Ellis are not "original sources," and even if they were, they are barred by the first-to-file doctrine. (Alvarez does not claim to be an "original source." Appellees' Br. 44.) As a result, Appellees are not entitled to a 0-7% fee determination.

Appellees argue that they are entitled to a 0-7% award even if they "were not original sources." Appellees' Br. 65. This misstates the law. Courts interpreting the

analogous provision under the FCA, 31 U.S.C. § 3730(d)(1), consistently hold that this fee award is only available to relators who are deemed to be "original sources." *See Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 452 (5th Cir. 1995) (noting that Congress included that provision to provide for "the case where the information has already been disclosed and the person qualifies as an 'original source' but where the essential elements of the case were provided to the government or news media by someone other than the *qui tam* plaintiff."); *United States ex rel. Merena v. SmithKline Beecham Corp.*, 114 F. Supp. 2d 352, 361 (E.D. Pa. 2000) (allowing for a fee determination where there is "a prior public disclosure" from "an otherwise properly qualified 'original source'"). Otherwise a "relator whose claim is subject to dismissal under section 3730(e)(4) [the FCA public disclosure bar] may not receive any share of the proceeds attributable to that claim." *Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 106 (3d Cir. 2000).

Here, because Alvarez has conceded that she is not an original source, LaFountain and Ellis must establish **both** that they are original sources **and** that they can survive the first-to-file bar before Appellees may recover under Section 36.110(b). Appellees rely upon *United States ex rel. Burke v. St. Jude Med., Inc.*, No. CV 16-3611-SAG, 2021 WL 6135202 (D. Md. Dec. 29, 2021) for the assertion that "had [relator] been an original source, she could have been awarded a

15% 'finder's fee'." Appellee's Br. 65. But the *Burke* court held that relator **was** an "original source" before awarding her a nominal 0.5% share. *Burke*, 2021 WL 6135202 at *7-8.

Even if LaFountain and Ellis were found to be "original sources," Appellees fail to present any evidence that either provided significant information or played a role in advancing *State v. Xerox* to litigation that could justify even a nominal award under Section 36.110(b). Appellees argue (at 65) that Ellis "met with and trained the attorneys from the Attorney General's Office," but that meeting occurred on February 10, 2014—over two years after the State began investigating Xerox's conduct. CR.3357. Appellees argue (at 64) that Ellis "repeatedly encouraged" the State to pursue Xerox, but again, this occurred after the State began investigating Xerox and after the State **hired** Ellis to review orthodontic claims when Xerox's fraud became publicly disclosed. C.R.8647-53. Moreover, this "catalyst" theory— that a relator is entitled to a share because it "encouraged" the government to pursue claims—has been repeatedly rejected by courts in the FCA context and should be rejected here. *See United States ex rel. Hays v. Hoffman*, 325 F.3d 982, 990 (8th Cir. 2003); *United States ex rel. Montgomery v. St. Edward Mercy Med. Ctr.*, No. 4:05-cv-00899, 2007 WL 2904111, at *9 (E.D. Ark. Sept. 28, 2007); *United States ex rel. Findley v. FPCBoron Emps.' Club*, 105 F.3d 675, 688 (D.C. Cir. 1997) ("a relator's

ability to recognize the legal consequences of a publicly disclosed fraudulent transaction does not alter the fact that the material elements of the violation already have been publicly disclosed."); *United States ex rel. Karadsheh v. Fata*, No. 2:13-cv-13333, 2019 WL 6702141, at *3 (E.D. Mich. Dec. 9, 2019); *United States ex rel. Rille v. PriceWaterhouseCoopers LLP*, 803 F.3d 368, 374 (8th Cir. 2015).

In sum, Appellees are not "original sources" and even if they were, they did not provide significant information or play a role in advancing *State v. Xerox* to litigation and are therefore not entitled to any relator's share.

## PRAYER

For the reasons above, the State respectfully requests that this Court reverse and either dismiss the underlying action or render judgment that Appellees are not entitled to a relator's share of the *State v. Xerox* settlement.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AMY SNOW HILTON
Chief, Healthcare Program Enforcement Division

Office of the Attorney General
P.O. Box 12548, MC 056-1
Austin, Texas 78711-2548
Tel: (512) 750-4880
Fax: (512) 499-0712

*/s/ Austin Kinghorn*
AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation
Texas State Bar No. 24072184
Phone: (512) 936-1180
Austin.Kinghorn@oag.texas.gov

BRIAN VANDERZANDEN
Assistant Attorney General
Texas State Bar No. 24081557
Phone: (512) 936-9929
Brian.Vanderzanden@oag.texas.gov

*Counsel for Appellant State of Texas*

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), because it contains 7,307 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

/s/ *Austin Kinghorn*
AUSTIN KINGHORN
Deputy Attorney General for
Civil Litigation

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lynette Karch-Schroder on behalf of Austin Kinghorn
Bar No. 24072184
Lynette.karch-schroder@oag.texas.gov
Envelope ID: 106381794
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Reply Brief for Appellant
Status as of 10/2/2025 3:03 PM CST

Associated Case Party: Christine Ellis

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Caitlyn Silhan | 24072879 | csilhan@waterskraus.com | 10/2/2025 2:56:47 PM | SENT |
| James Moriarty | 14459000 | jim@moriarty.com | 10/2/2025 2:56:47 PM | SENT |
| Charles S.Siegel | | csiegel@waterskraus.com | 10/2/2025 2:56:47 PM | SENT |

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Brian Vanderzanden | | brian.vanderzanden@oag.texas.gov | 10/2/2025 2:56:47 PM | SENT |
| Jonathan Rohde | | jonathan.rohde@oag.texas.gov | 10/2/2025 2:56:47 PM | SENT |
| Brittany Peters | | Brittany.Peters@oag.texas.gov | 10/2/2025 2:56:47 PM | SENT |
| Lynette Karch-Schroder | | lynette.karch-schroder@oag.texas.gov | 10/2/2025 2:56:47 PM | SENT |
| Austin Kinghorn | 24072184 | austin.kinghorn@oag.texas.gov | 10/2/2025 2:56:47 PM | SENT |